## 7669

### W. S. FORBES & CO. v. W. M. & J. J. PEARSON.

1. EVIDENCE—CONTRACTS.—A witness may give his construction of the contract in issue, after opposing counsel has elicited from him his understanding of the true meaning of such contracts and of his dealings with plaintiff.

2. IBID.—IBID.—WORDS AND PHRASES.—PAROL EVIDENCE is admissible to explain the signification of words according to the usage of those accustomed to make contracts of the kind in issue where the meaning is not plain.  Here admission by trial Judge for his benefit sustained.

3. A CONTRACT FOR FUTURE DELIVERY OF GOODS, made with the *bonâ fide* intention at time of making that the goods contracted for should be actually delivered, is not rendered illegal by the insertion of a clause empowering the seller to close out the contract and hold the buyer responsible for any loss on his failure to put up margins as security against loss or decline of market price before delivery.

4. A NEW TRIAL will not be granted for the reason that the inference may be drawn from the remarks of the trial Judge in refusing the motion below that he was of opinion the preponderance of the evidence was against the verdict.

Before GAGE, J., Marlboro, April term, 1909.    Affirmed

Action by W. S. Forbes & Co. against W. M. and J. J. Pearson.  From judgment for plaintiffs, defendants appeal.

*Messrs. Townsend & Rogers,* for appellants, cite: *Witness should not construe clauses of the contract:* 77 S. C., 92; 44 S. C., 236; 46 S. C., 229; *Martin* v. *Tel. Co.,* 81 S. C. *Verdict is contrary to weight of evidence:* 75 S. C., 294; 68 S. C., 526; 69 S. C., 168; 65 S. C., 402, 389.  *Contract on its face is contrary to law:* 14 Ency., 316; 50 S. C., 545; 8 Ency., 1010-11; 45 S. C., 368; 65 Me., 570; 72 Pa., 155; 39 Mich., 33; 55 S. C., 548.

*Messrs. Newton & Owens,* contra, cite: *When witness may construe reply:* Green Ev., secs. 467, 468; 2 Rich., 176; 29 S. C., 34; 68 S. C., 304.  *Contract is lawful:* Code

1902, 2310; 45 S. C., 365; 19 S. C., 65; 32 S. C., 144; 72 S. C., 35; 56 S. C., 111; 50 S. C., 37; 54 S. C., 352; 47 Ark., 188; 5 L. R. A., 200; 69 Ia., 229; 48 Conn., 116; 15 Fed. R., 438; 83 Ill., 324; 110 U. S., 508.

September 26, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The question involved in this case was whether a gambling venture on the future price of meat, or a real sale of meat to be actually delivered in the future, was contemplated by the following contract:

"W. S. Forbes & Co. have sold to M. W. & J. J. Pearson, Bennettsville, S. C., the following product: 25,000 pounds 55-60 Ave. Ribs, at 9.55, loose, delivered Bennettsville. Shipment buyer's option. The above price is based on shipment on or before January 31, 1907. A carrying charge of 7½ cents per one hundred pounds per month, or fraction thereof, to be added to the above price if the meat is carried beyond January 31, 1907, and the entire contract to be completed by May 31, 1907. Margins to cover any decline in the market shall be deposited by the buyer promptly on demand of the seller, and the failure to deposit same promptly shall entitle the seller to close out this contract and hold the buyer for any loss. Ribs exchangeable for other cuts of dry salt meat, at ruling difference in price day of shipment.

(Signed)   W. S. FORBES & Co.

Accepted.      (Signed) M. W. & J. J. PEARSON. January 16, 1907."

After the contract was made there was a decline in the price of meat, upon which plaintiffs made a draft on defendants for the margins according to the agreement. Defendants refused to pay the draft, and plaintiffs then wrote that the time for ordering out the meat having expired they would ship it according to the contract unless defendants arranged promptly for the margin. The defendants

failed to comply with this demand, and by letter of May 31, 1907, directed the plaintiffs not to ship the meat. Thereupon the plaintiffs sold the meat on the market below the contract price and brought this action to recover the loss of two hundred and six dollars and twenty-five cents. The verdict and judgment was in favor of the plaintiffs for the amount claimed.

The first exception assigns error in allowing the witnesses McKellar and Exum to give their opinions as to whether the written contract contemplated an actual delivery of the meat. The exception cannot be sustained, for the Court refused to allow plaintiff's counsel to elicit from the witnesses any opinion as to the meaning of the contract, until defendant's counsel had himself opened the subject by examination of the witnesses as to their understanding of the true meaning of contracts like this, appearing to contemplate future delivery, and as to the dealings of the witnesses with the plaintiffs.

The defendant next contends that the witness DePass should not have been allowed to define the meaning of these expressions found in the contract: "Loose delivered Bennettsville," "Shipment buyer's option," "Dry Salt," and "Margins to cover any decline in the market shall be deposited by the buyer promptly on demand of the seller, and the failure to deposit same promptly shall entitle the seller to close out this contract and hold the buyer for any loss." Where doubt arises as to the meaning of the words used in a contract, for the enlightenment of the Judge or jury, parol evidence may be admitted of the signification the words have according to the usage of those accustomed to make contracts of this kind, but such evidence is not admissible when the meaning of the language is plain. *Fairly* v. *Wappoo Mills*, 44 S. C., 227, 22 S. E., 158; 29 L. R. A., 215; *Kentucky Co.* v. *Peoples Supply Co.,* 77 S. C., 92, 57 S. E., 696. In this case, the Circuit Judge having admitted the evidence on the ground that he himself did not under-

stand the meaning of the terms used, surely this Court cannot say that they were too plain to need explanation. Furthermore, the defendants have no ground for complaint, for the meaning expressed by the witness was that which appellants' counsel contend was perfectly plain.

There was no error in the following instruction to the jury: "An option in a contract for future delivery of goods that will allow another settlement of the contract than the actual delivery of the goods is not invalid, if it is also provided in the contract and it was the intention of the parties to the contract that there should be an actual delivery of the goods sold."

The defendants insist on this point that although the parties may have entered into the contract with the *bona fide* intention that the goods contracted for should be actually delivered, yet the contract was made illegal by the provison giving the seller the right on decline of market price before delivery "to close out this contract and hold the buyer responsible for any loss," on failure of the buyer to put up margins as security against loss. As to this contention it is enough to say that the Court can add nothing to the statute, which makes the test of validity of such a contract the *bona fide* intention of both parties at the time of making the contract that the article sold shall be actually delivered by the seller and received by the buyer.

There is no ground to ask this Court to reverse the order of the Circuit Court refusing a new trial. There was strong evidence on both sides of the issue whether the contract contemplates merely betting on the market or a *bona fide* delivery of the meat. We do not understand the following language used by the Circuit Judge to imply that he thought there was a preponderance of the evidence in favor of the defendants: "Candidly, I should have drawn a different conclusion from that which the jury drew; but I do not know how largely my judgment was affected by my antipathy to gambling contracts, and by my suspicion

that such transactions are of too common occurrence. Viewing the testimony apart from these prejudices, I cannot say the verdict was against the clear preponderance of the testimony." But even if such an inference could be drawn as to the opinion of the Circuit Judge it would not be ground for this Court to order a new trial. *Beaudrot* v. *Southern Ry.*, 69 S. C., 168, 48 S. E., 106; *Hall* v. *Northwestern Ry.*, 81 S. C., 522, 62 S. E., 848.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.