Richard SIMMONS, Leon Wallace, Jr., Ricardo Bryant, Lucion Bradley, Jr., James W. Knight, Samuel Coakley, James Johnson, William S.H. Davis, David L. Gadsden, Jasper L. Walker, John H. Poole, John Henry Deas, Charles Swinton, Appellants,

v.

SOUTH CAROLINA STATE PORTS AUTHORITY; W.W. Johnson; James C. Hair, Jr.; Joseph P. Riley; James C. Todd; James P. Moore; Harold E. Trask; John T. Welsh, Jr.; W. Don Welsh, Appellees.

Richard SIMMONS, Leon Wallace, Jr., Ricardo Bryant, Lucion Bradley, Jr., James W. Knight, Samuel Coakley, James Johnson, William S.H. Davis, David L. Gadsden, Jasper L. Walker, John L. Poole, John Henry Deas, Charles Swinton, Appellants,

v.

SOUTH CAROLINA STATE PORTS AUTHORITY; W.W. Johnson, James C. Hair, Jr., Joseph P. Riley, James C. Todd, James P. Moore, Harold E. Trask, John T. Welsh, Jr., W. Don Welsh, Appellees.

Nos. 80–1652, 81–1884.

United States Court of Appeals, Fourth Circuit.

Argued June 9, 1982.

Decided Nov. 29, 1982.

Ray P. McClain, Charleston, S.C. (Steven J. Metalitz, Arthur C. McFarland, Charleston, S.C., on brief), for appellants.

James B. Spears, Jr., Greenville, S.C. (James J. Baldwin, Haynsworth, Baldwin, Miles, Johnson, Greaves & Edwards, William H. Vaughan, Jr., Neil C. Robinson, Jr., Grimball, Cabaniss, Vaughan & Robinson, Charleston, S.C., on brief), for appellees.

Before BUTZNER, WIDENER and ERVIN, Circuit Judges.

WIDENER, Circuit Judge:

On appeal are two separate questions arising from an action by eight employees of the South Carolina Ports Authority against the Authority, claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* and of 42 U.S.C. §§ 1981 and 1983. The parties eventually entered into a settlement agreement granting extensive affirmative relief, a money award, and attorneys' fees which disposed of all issues except the Authority's allegedly discriminatory denial of pension credit for certain employees who worked for the Authority prior to July 30, 1969. One of the questions before us is the district court's decision that the employees were time barred from bringing suit for retroactive awarding of the retirement credits. *Simmons v. South Carolina Ports Authority,* 495 F.Supp. 1239 (D.S.C.1980). The other question is the district court's dismissal of the suit under the terms of the settlement agreement. On each question, we affirm the decision of the district court.

The pension credit issue arises from the Authority's pre-1969 practice of classifying employees as either temporary or permanent. Employees in the temporary class were hired primarily for the positions of cargo handler and forklift operator due to fluctuations in the Authority's workload involving those positions. The temporary class contained predominantly black employees, and the district court found that some black employees remained classified as temporary longer than similarly employed white employees. It did not, however, make any finding that the temporary employees were victims of racial discrimination. The Authority did not enroll any temporary employees in the South Carolina Retirement System until they were classified as permanent, and it has treated all employees, black and white, alike with respect to both pre and post July 30, 1969 service.

On July 30, 1969, the Authority revised its classification system so that all employees, including former temporary employees, received permanent status if they had been classified as temporary employees for at least the immediately preceding 60 days. Thus, since July 30, 1969 all employees who have worked for the Authority for longer than 60 days have received Retirement System credit.

Plaintiffs maintain the employees who were temporary under the pre-1969 classification scheme should have received retirement credit for their service and that they did not because of racial discrimination. There is no claim that these employees have been discriminatorily treated for retirement purposes since July 30, 1969. The district court concluded that the plaintiffs' causes of action were not continuing violations and computed the limitation period based on the cause of action accruing at the latest on July 30, 1969. Plaintiffs argue that their causes of action do not accrue until each affected employee actually retires from the Authority.

■ There is no dispute as to the applicable statutes of limitation. The plaintiffs' Title VII claims are subject to the requirement that an EEOC complaint must be filed within 180 days of the occurrence of the allegedly discriminatory practice. 42 U.S.C. § 2000e–5(e). The claims under 42 U.S.C. §§ 1981 and 1983 are subject to the six year South Carolina statutes of limitation for contracts (§ 1981) and for "any . . . injury to the person or rights of another, not arising on contract. . . ." (§ 1983). S.C. Code § 15–3–530(1), (5).

We affirm on its opinion the order of the district court that the Title VII and §§ 1981 and 1983 claims were barred, 495 F.Supp. 1239 (D.S.C.1980).[1] We note that

1. Title VII did not become applicable to the Authority until March 24, 1972. Considering that the Title VII statute started to run on that date, it had run out long before the suit was filed.

The plaintiffs filed their charges with the EEOC in August and September 1975.

in *Allen v. United States Steel Corp.,* 665 F.2d 689 (5th Cir.1982), the court followed the opinion of the district court in its construction of *United Airlines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the case upon which the district court principally relied in coming to its conclusion that the violations alleged were not continuing violations and that the statute of limitations commenced to run at the time of the violation, not at the time of retirement. In addition to the reasons given by the district court, we add the following.

The plaintiffs argue that under the general rule challenging pension benefits the statute of limitations begins to run on the date a claim for a pension is rejected. Application of this rule, they contend, establishes that their claims were timely. The numerous cases they cite in support of their position, however, are not dispositive for the following reasons. Each of the former temporary employees in the class affected, shortly after July 30, 1969, on which date they were given permanent status, signed under oath an Enrollment Blank for the South Carolina Retirement System directed to the Retirement Board in order that he might "be properly enrolled in the South Carolina Retirement System." Those forms which permitted immediate participation in the South Carolina Retirement System indicated the "effective date of employment" as "7/30/69." Thus, it could not be said that the affected employees did not know in 1969 the date of their employment for purposes of participation in the Retirement System.

After the decision of the district court, two Supreme Court cases on the same subject matter have been decided. While neither is exactly on point, both are persuasive support for the district court's judgment. *Chardon v. Fernandez,* 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (per curiam), and *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), concern the accrual of causes of action under 42 U.S.C. §§ 1981 and 1983. Both cases concerned tenure decisions of educational institutions. In *Ricks,* the plaintiff was denied tenure, but was offered a one year terminal contract which would not be renewed. 449 U.S. at 252–54, 101 S.Ct. at 501–02. In *Chardon,* the plaintiffs were notified on a certain date that they would be terminated at a future date. 454 U.S. at p. 7, 102 S.Ct. 28. In both cases, the plaintiffs argued that the statute of limitation should run from the date that their employment ended rather than the date on which they learned that they would not receive tenure. The Supreme Court disagreed.

In *Ricks,* the Court noted, "The limitations period, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past." 449 U.S. at 256–57, 101 S.Ct. at 503. The Court continued:

> Determining the timeliness of Ricks' EEOC complaint, and this ensuing lawsuit, requires us to determine the "unlawful employment practice" of which he complains. Ricks now insists that discrimination motivated the College not only in denying him tenure, but also in terminating his employment [at the end of the one year contract] .... In effect, he is claiming a "continuing violation" of the civil rights laws with the result that the limitations period did not commence to run until his 1-year "terminal" contract expired.... Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination. *United Air Lines v. Evans,* [431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)].

449 U.S. at 257, 101 S.Ct. at 503–04. The Court concluded that any discriminatory act which occurred actually occurred when Ricks was denied tenure, thus starting the running of statute of limitation. Id. at 258. Explaining the *Ricks* reasoning in *Chardon,* the Court said: "In *Ricks,* we held that the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful." 454 U.S. at p. 8, 102 S.Ct. at p. 29 (emphasis in original).

Also, a recent decision of the South Carolina Supreme Court is not persuasive for the plaintiffs in this case. In *Anderson v. South Carolina Retirement System,* 293 S.E.2d 312 (S.C.1982), the court said, in holding that the plaintiff was not entitled to retroactive benefits on a successful application filed in 1979 instead of relating the benefits back to an unsuccessful application filed in 1975, that the right to benefits does not arise until an application is made and proof is submitted as the statute requires. This case was between a claimant and the Retirement Board and concerned no act of the employer's. In the case before us, the alleged action sought to be corrected is that of the employer which occurred at the latest in 1969.

The second issue before us concerns a settlement agreement entered into by the parties, and approved by the district court on September 7, 1978. The agreement disposed of all issues in the case other than the pension credit issue. The agreement provided, in part:

> This Joint Settlement Agreement will remain effective for a period of eighteen (18) months after its execution.... This action will be dismissed with prejudice unless within thirty (30) days after the last [compliance] reports are filed ... Counsel for Plaintiffs for good cause shown request in writing the Court's review of Defendant's final report.

On March 17, 1980, the Authority filed its last compliance report as required by the settlement agreement. It had previously filed reports 30 days after the approval of the settlement and 9 months from that date. No exception was taken to either the 30 day or the 9 month report. Within the 30-day objection period, plaintiffs requested an additional 30 days to review the report, which was agreed to by the defendants, and within the additional 30-day period plaintiffs' attorney wrote a letter to defendants' attorney listing several objections to the final report, and two days later, yet within the 30-day extension, plaintiffs' attorney wrote to the court requesting that the matter remain open for "a reasonable further period." Defendants' attorney neither agreed to this request nor objected to it, and the court took no action thereupon. The plaintiffs then filed nothing for some 7 or 8 months, and, in January, the defendants moved to dismiss the case pursuant to the terms of the settlement agreement. Subsequently, the plaintiffs filed a formal motion for a review of the defendants' compliance with the settlement agreement. After a hearing on the matter, the district court held that the plaintiffs' motion was untimely and dismissed the case pursuant to the defendants' motion under the settlement agreement.

We do not think this action of the district court in construing its own order, which action deserves deference, was an abuse of discretion, or that its holding that the motion to review the last progress report was untimely is clearly erroneous in fact or erroneous in law.

Accordingly, the order of the district court denying relief on account of the retirement fund claims and the judgment of the district court dismissing the case are each

AFFIRMED.